IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| **MOHAMMED ALWAN,** § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION NO. __5:23-cv-208____ | |
| § | | |
| **ZIAD E. ABOUKLOUB,** § | **JURY DEMANDED** | |
| *Defendant*. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Mohammed Alwan complains against Defendant Ziad E. Aboukloub, and respectfully alleges as follows:

### I.   PARTIES

1.   Plaintiff Mohammed Alwan is a citizen of the United States and a citizen of the State of Georgia, whose address is 170 Elysian Drive, Fayetteville, Georgia 30214.

2.   Defendant Ziad E. Aboukloub is an individual admitted for permanent residence in the United States and is a subject of a foreign state, whose address is 6245 Wilshire Blvd., Apartment 1310, Los Angeles, California 90048, and Suite 800, Building 42, Entrance 13, 5th Floor, Doha Qatar.

### II.   JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to 28 U.S.C. 1332(a) because the suit is between a citizen of a U.S. state and a subject of a foreign state that is not a lawfully admitted permanent U.S. resident domiciled in the same U.S. state, and the amount in controversy exceeds $75,000.00, excluding interest and cost. Venue is proper in this district under 28 U.S.C. § 1391(a) and (c)(3). Further, pursuant to the contract that is the subject of this litigation, the parties agreed that any proceeding arising out of the Agreement would be brought only in the

state or federal courts sitting in Texas. Each party consented to the jurisdiction of such Court. *See* Exhibit A, Representative Agreement, ¶ 15.

### III.   CONDITIONS PRECEDENT

4.   All conditions precedent have been performed or have occurred.

### IV.   FACTUAL BACKGROUND

5.   Plaintiff and Defendant entered into a Representative Agreement on February 15, 2022 (the Agreement). *See* Ex. A.

6.   The Agreement was signed by Malek Fayez Said Azzam (Malek) under the Durable Power of Attorney of Ziad E. M. Aboukloub to Malek Fayez Said Azzam, executed on February 7, 2022, by Ziad E. M. Aboukloub, before Defendant Aboukloub's own attorney, Mr. Anthony G. Novak, Notary Public (the POA). *See* Ex. B, Durable Power of Attorney. The POA was signed in Indiana.

7.   Defendant personally negotiated and agreed to the terms of the Agreement with Plaintiff, and Malek had full authority to sign the Agreement under the POA.

8.   Defendant contracted with Plaintiff to represent Defendant in all matters related to entities Defendant had formed, which are identified in the Agreement as Tubekraft USA, LLC and Tubekraft USA Real Estate, LLC (together the Tubekraft entities). The Tubekraft entities were formed in Indiana. Tubekraft USA, LLC creates steel tubes for the automotive, engineering, ag machinery, food processing industry, and energy sectors. Its core business is to manufacture DOM (Drawn Over Mandrel) tubes, hydraulic tubes, and tubular components for the automotive and aerospace industries (the Tubekraft business). The Project related to all matters involving Defendant's interest in the development of the Tubekraft USA business in Indiana and the building of a manufacturing facility.

9. Plaintiff's responsibilities were to represent Defendant in all matters related to the Tubekraft entities, including negotiations with Defendant's partners, all legal matters, and all contract matters. Ex. A, ¶ 7. Plaintiff was responsible for negotiating pledge agreements and was present for all financial and legal meetings. Plaintiff facilitated and participated in meetings with building contractors on behalf of Defendant. *Id*. The Agreement called for Plaintiff to travel to Indiana to check on the progress of the Project and to coordinate all aspects of the Project, which Plaintiff did. *Id*. at ¶ 8.

10. Plaintiff agreed to perform services for Defendant as an independent contractor. Ex. A, Recitals and ¶ 1.

11. Defendant agreed to pay Plaintiff $10,000.00 a month in a lump sum at the end of the Project as that term is defined in the Agreement, which was estimated to be $150,000.00, with a bonus of 5% of the cost of the Project, no later than May of 2023. The bonus was to be at least the sum of $200,000.00. Ex. A, ¶ 2.

12. Defendant further agreed to indemnify Plaintiff for all legal fees and costs, including attorneys' fees associated with any lawsuit brought by Plaintiff against Defendant. Ex. A, ¶ 8.

13. The term of the Agreement was from February 15, 2022, to May of 2023. Plaintiff completed all conditions precedent under the Agreement, and the Agreement was not terminated early.

14. Upon completion of the Agreement, Plaintiff submitted a request for payment to Defendant. Defendant has failed and refused to pay Plaintiff for the services provided by Plaintiff under the Agreement.

## V. CLAIMS FOR RELIEF

**COUNT 1 – Breach of Contract**

15. Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

16. Plaintiff and Defendant entered into an agreement for Plaintiff to represent Defendant in all matters related to Defendant's interest in the development of the Tubekraft USA business in Indiana and the building of a manufacturing facility in Indiana. Plaintiff's responsibilities included negotiations with Defendant's partners in the Tubekraft business, handling of all legal matters of the Tubekraft business related to Defendant, and handling of all contract matters.

17. Plaintiff negotiated pledge agreements and was present for all financial and legal meetings on behalf of Defendant. Plaintiff facilitated and participated in meetings with building contractors on behalf of Defendant. Plaintiff travelled to Indiana to check on the progress of the building of the manufacturing facility and coordinated all aspects of the development of the Tubekraft business in Indiana.

18. Plaintiff fully performed all his obligations under the Agreement. However, Defendant has failed and refuses to pay Plaintiff for the services provided under the Agreement. Plaintiff seeks all damages to which he is justly entitled, including attorneys' fees.

**COUNT 2 – Fraud and Fraud in the Inducement**

19. Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

20. Defendant intentionally and knowingly made false representations to Plaintiff to induce Plaintiff to change his circumstances and perform services for Defendant with the promise of payment, which Defendant never intended to pay. Plaintiff performed the services, Defendant received the benefit, and failed to make payment to Plaintiff for the services rendered. Plaintiff relied upon Defendant's fraudulent statements.

21. Plaintiff seeks all damages to which he is justly entitled, including punitive damages.

## VI.   ATTORNEYS' FEES

22. Plaintiff seeks attorneys' fees and expenses as provided for in the Agreement. Alternatively, Plaintiff seeks attorneys' fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## VII.   JURY DEMAND

23. Plaintiff demands a jury trial.

## VIII.   PRAYER

WHEREFORE, premises considered, Plaintiff respectfully requests that Defendant be cited to appear and answer and that on final trial hereof, Plaintiff have and recover:

1. Actual and exemplary damages to be proven at trial;

2. Attorneys' fees and expenses;

3. Costs of suit;

4. Pre- and post-judgment interest at the maximum rate allowed by law; and

5. Such other and further relief as the Court deems just and proper.

Respectfully submitted,


By: */s/ Fernando M. Bustos*
    Fernando M. Bustos; SBN: 24001819
    fbustos@bustoslawfirm.com
    Deirdre Kelly Trotter; SBN: 45006069
    dtrotter@bustoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

ATTORNEYS FOR PLAINTIFF

# REPRESENTATIVE AGREEMENT

**THIS REPRESENTATIVE AGREEMENT** (The "Agreement") is entered into this February 15, 2022, by and between Ziad E. Aboukloub with USA Permanent Resident USCIS # 062-942-142, Partner in Tubekraft USA, LLC and Tubekraft USA Real Estate, LLC, having its principal place of business at Lot 3 and 4 in Industrial Development of LaPorte – East Gate Complex Phase One; at Intersection of Industrial Parkway / Fail Rd., LaPorte, In 46350 ("Client"), and Mohammed Ahmad Alwan with address at Office 318, LOB-14, Jebel Ali Free Zone, Dubai, UAE ("Representative")

**WHEREAS**, the Client desires to contract with Representative to represent him in all Tubekraft USA, LLC and Tubekraft USA Real Estate, LLC ("Project") in accordance with terms of this Agreement; and

**WHEREAS**, Representative desires to perform certain services for Client, on an independent contractor basis as set forth in this Agreement, with no liability or responsibility for any actions or lack thereof of and/or decisions made by the Client.

**NOW THEREFORE**, in consideration of the above Recitals, which are hereby incorporated into the below Agreement, and in consideration of the mutual promises made herein, the receipt and sufficiency of which are hereby acknowledged, the Client and Representative further agree as follows:

**1. Services.** Representative agrees to perform the services (the "Services") as described in Section 7 of this agreement

Representative represents and acknowledges that the Services performed under this Agreement will be done using Representative's own equipment at Representative's own home or place of business, and at hours and times as determined by Representative. Representative is not required to provide services exclusively to the Client during the term of this Agreement.

**2. Compensation**. Client shall pay Representative for the performance of the services detailed in this Agreement according to the following:

   A. For all Business Travel & Living expenses

   B. Personal time & efforts: $10,000/month to be paid as lumpsum at the end of the project (no later than May 15, 2023) total estimated amount at $150,000.

   C. Bonus pay out at factory commissioning equivalent to 5% of cost of the project to be paid no later than May 2023 but not to be lower than $200,000.

**3. Term**. The term of this Agreement shall be from February 15, 2022 until the completion of the project not later than May 2023. The Agreement may be terminated earlier by final completion of the Services by the Representative and acceptance of the services by the Client or through the termination provisions provided herein.

**4. Termination.** Either party may terminate this Agreement at any time by giving the Client written notice of not less than sixty (60) days. In the event of termination, payments will be made to Representative in full and shall not be less than $350,000 (The Pay out) which is also the cap/maximum Client will pay for Services.

**EXHIBIT A**

**5. Relationship.** The parties understand and agree that Representative is an independent Representative and that Representative is not an employee, agent or servant of the Client, nor is Representative entitled to Client employment benefits. As an independent Representative, Representative agrees that:

A. Client will not provide training or instruction to Representative or any of its employees regarding the performance of Services hereunder; and
B. Neither Representative, nor its employees will receive benefits of any kind from the Client other than compensation stipulated in Article 2. Representative represents that it is not required to work exclusively for the Client; and
C. Representative will not combine its business operations in any way with the Clients business operations and each party shall maintain their operations as separate and distinct.

**6. Change in the Work.** Client may order changes in the work and services detailed in this Agreement, consisting of additions, deletions, or modifications. All changes shall be authorized by a written Change Order designating the work to be added, changed, or deleted, the increase or decrease in costs, and any change in time for completion of the project. Representative and Client, or their duly authorized agents, shall sign the Change Order.

**7. Representative Responsibilities**

A. Represent Client with all Tubekraft USA, LLC and Tubekraft USA Real Estate, LLC matters including negotiations with client partners on share discussion, legal matters, contract support. Pledge agreements, and to be present in all financial and legal meetings.

B. Facilitate meetings with partners, state, financial, legal, & building contractors

C. Travel to Indiana as needed to check project progress, and to coordinate schedules with Partners

**8. Indemnification.** The Client agrees to indemnify, defend, and protect the Representative from and against all lawsuits and costs of every kind pertaining to the Client's business including reasonable legal fees due to any act or failure to act by the Client based upon the Services. Client shall indemnify, defend and hold Representative harmless from and against any and all third party claims, liability, suits, losses, damages and judgments, joint or several, and shall pay all costs and expenses (including counsel's fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising there from, that Representative incurs as a result of having performed services on behalf of Client. Client Warrants that he is responsible for all actions and decisions made by the Representative in connection with the project and that he holds the responsibility to ensure good and accurate communications with Representative, his partners and representatives in all decisions and agreements made. Client agrees to pay all legal fees and costs including attorney cost associated with all lawsuits brought forward by the Client's business, Representative, suppliers, representatives, partners or any third party. This indemnification will survive the termination of this agreement.

**9. Assignment.** The Representative may assign rights and may delegate duties under this Agreement to other individuals or entities acting as a subcontractor ("Subcontractor").

**10. Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties and supersedes any prior agreement or understanding relating to the subject matter of this Agreement.

**11. Modification.** This Agreement may be modified or amended only by a duly authorized written instrument executed by the parties hereto, or by their legal representatives, and/or Attorney's.

**12. Severability.** If any of the provisions of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of the party shall be construed and enforced accordingly, to effectuate the essential intent and purposes of this Agreement.

**13. Exclusivity.** This Agreement does grant Representative an exclusive privilege and right to supply the services highlighted in Section 7. This exclusivity may be terminated only if this agreement is terminated with appropriate notice and agreement by both parties. Subject that all compensations have been settled and agreed.

**14. Interpretation.** The validity, interpretation and effect of this Agreement shall be determined under Texas law. Any legal proceeding shall take place in Lubbock, Texas, USA. All actions arising directly or indirectly as a result or in consequence of this Agreement shall be instituted and litigated only in courts having situs in the USA. Any provision found to be invalid or unenforceable shall have no effect upon the validity of any other section of this contract.

**15. Governing Law and Jurisdiction.** This Agreement will be governed by the laws of the State of Texas without regard to conflicts of law principles. Any proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the parties only in the state or federal courts sitting in Texas. Each of the parties' consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

**16. Effective Date.** The effective date of this Agreement shall be the date first written above regardless of the date when the Agreement is actually signed by the parties.

**IN WITNESS WHEREOF**, the parties have executed this Contract as of the date first written above.

For Client (Ziad E. Aboukloub)                           For Representative

By: Malek Fayez Said Azzam                              Mohammed Ahmad Alwan
(Attorney In Fact / POA Dated 07 Feb. 2022)             Date: 02/20/2022
Date: 20-Feb-2022

# DURABLE POWER OF ATTORNEY
## OF
## ZIAD E. M. ABOUKLOUB

BY THIS DURABLE POWER OF ATTORNEY, I name an attorney-in-fact with power to act on my behalf, pursuant to Indiana Code 30-5, as it exists now and as amended in the future.

1. **ATTORNEY-IN-FACT.** As my attorney-in-fact, I name **MALEK FAYEZ SAID AZZAM**, whose address and telephone number are 3841 50th Street Suite B, Lubbock, Texas, 79413, (806) 500-6339.

2. **EFFECTIVE IMMEDIATELY.** This Power of Attorney shall be effective as of the date it is signed.

3. **POWERS.** I give my attorney-in-fact or any successor attorney-in-fact the following powers specified in section I.C. 30-5-5-1, et seq. to be used on my behalf, PROVIDED that my attorney-in-fact shall not have any power which would cause my attorney-in-fact to be treated as the owner of any interest in my property; however, my attorney-in-fact may receive gifts of property as described in Section 3.10 herein.

    3.1 REAL PROPERTY. Authority with respect to real property transactions pursuant to I.C. 30-5-5-2, providing in part but not limited to the right to sell, exchange, convey with or without covenants, quitclaim, release, surrender, mortgage, encumber, lease, sublet, or otherwise dispose of an estate or interest in real property.

    3.2 TANGIBLE PERSONAL PROPERTY. Authority with respect to tangible personal property pursuant to I.C. 30-5-5-3, providing in part but not limited to the right to sell, exchange, convey, mortgage, encumber, pledge, hypothecate, pawn, grant options concerning, lease or sublet, or otherwise dispose of tangible personal property or an interest in tangible personal property.

    3.3 BOND, SHARE AND COMMODITY. Authority with respect to bond, share and commodity transactions, pursuant to I.C. 30-5-5-4, providing in part but not limited to the right to buy, receive, or otherwise acquire ownership or possession of a bond, a share, an instrument of similar character, a commodity interest or an instrument with respect to the bond, share, or interest, together with the interest, dividends, proceeds, or other distributions connected with the instruments, and to sell, sell short, exchange, transfer, release, surrender, hypothecate, pledge, grant options concerning, loan, trade in, or otherwise

1                   **EXHIBIT B**

dispose of a bond, a share, an instrument of similar character, a commodity interest, or an instrument with respect to the bond, share, or instrument.

**3.4** RETIREMENT PLANS. Authority with respect to retirement plans, pursuant to I.C. 30-5-5-4.5.

**3.5** BANKING. Authority with respect to banking transactions pursuant to I.C. 30-5-5-5, providing in part but not limited to the right to continue, modify, or terminate a deposit account or other banking arrangement made by or on my behalf before the execution of the power of attorney, and to make, sign and deliver checks or drafts for any purpose and withdraw by check, order, or other means funds or property deposited with or left in the custody of a banking institution either before or after the power of attorney was executed.

**3.6** BUSINESS. Authority with respect to business operating transactions pursuant to I.C. 30-5-5-6.

**3.7** INSURANCE. Authority with respect to insurance transactions pursuant to I.C. 30-5-5-7.

**3.8** TRANSFER ON DEATH TRANSFERS. Authority with respect to transfer on death or payable on death transfers pursuant to I.C. 30-5-5-7.5.

**3.9** BENEFICIARY. Authority with respect to beneficiary transactions pursuant to I.C. 30-5-5-8, providing in part but not limited to the right to represent and act for me in all ways and in all matters affecting a trust, a probate, an estate, a guardianship, an escrow, a custodianship, or other fund out of which I am entitled, or claim to be entitled as a beneficiary, to some share or payment.

**3.10** GIFTS. Authority with respect to gift transactions pursuant to I.C. 30-5-5-9, providing in part but not limited to the right to make gifts to organizations, charitable or otherwise, to which I have made gifts, and satisfy pledges made to organizations by me, or make gifts to my spouse, children, and other descendants or the spouse of a child or other descendant, either outright or in trust, for purposes the attorney in fact considers to be in my best interest, including the minimization of income, estate, inheritance, or gift taxes. Provided, however, that my attorney-in-fact shall not be limited by the restriction contained in I.C. 30-5-5-9(a)(2). Specifically, my attorney-in-fact, or a person that my attorney-in-fact has a legal obligation to support, may be the recipient of gifts in one (1) year that total more than the amount allowed as an exclusion from gifts under Section 2503 of the Internal Revenue Code in accordance with sound estate planning purposes.

**3.11**  FIDUCIARY. Authority with respect to fiduciary transactions pursuant to I.C. 30-5-5-10, providing in part but not limited to the right to represent and act for me in all ways and in all matters affecting a fund with respect to which I am or may be a fiduciary.

**3.12**  CLAIMS AND LITIGATION. Authority with respect to claims and litigation pursuant to I.C. 30-5-5-11, providing in part but not limited to the right to assert and prosecute before a court or other tribunal, a cause of action, a claim, a counterclaim, an offset, or a defense that I have or claim to have against an individual, a partnership, an association, a government, a person, or an instrumentality.

**3.13**  FAMILY MAINTENANCE. Authority with respect to family maintenance pursuant to I.C. 30-5-5-12, providing in part but not limited to the right to perform acts necessary for maintaining the customary standard of living or medical expenses of the spouse, children, and other persons customarily supported by me. (If military benefits are applicable, see Sec. 30-5-5-13)

**3.14**  RECORDS, REPORTS, AND STATEMENTS. Authority with respect to records, reports, and statements pursuant to I.C. 30-5-5-14 and I.C. 30-5-5-14.5, including the power to execute on my behalf any tax returns or any specific power of attorney required by any taxing authority to allow my attorney-in-fact to act on my behalf before that taxing authority on any return or issue.

**3.15**  ESTATE TRANSACTIONS. Authority with respect to estate transactions pursuant to I.C. 30-5-5-15, providing in part but not limited to the right to accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim, and recover a legacy, bequest, devise, gift, or other property interest or payment due or payable to me. In addition, my attorney-in-fact shall have the authority to create, amend, and appoint trustees for a trust described under 42 U.S.C. Section 1396p(d)(4)(B), often referred to as a Qualified Income Trust or currently known as a "Miller Trust", to enable me to seek and obtain Medicaid benefits.

**3.16**  HEALTH CARE. Authority with respect to health care, religious tenants and a funeral planning declaration pursuant to I.C. 30-5-5-16.

**3.17**  CONSENT TO OR REFUSAL OF HEALTH CARE. Authority to ask in the name of the principal for health care to be withdrawn or withheld when it is not beneficial or when any benefit is outweighed by the demands of the treatment and death may result. In the event any Power of Attorney of mine shall not also

be my designated Health Care Representative, then the designated Health Care Representative shall control, and any such Power of Attorney shall not have the authority provided in this provision.

**3.18**   DELEGATE.  Authority with respect to delegating authority pursuant to I.C. 30-5-5-18, providing my attorney-in-fact may delegate in writing to one (1) or more persons any or all powers given to my attorney in fact by this power of attorney.

**3.19**   ALL OTHER MATTERS.  Authority with respect to all other matters pursuant to I.C. 30-5-5-19, in which I grant my attorney-in-fact to act with respect to all possible matters and affairs affecting property owned by me that the principal can perform through an attorney-in-fact.

4.   ALL PRIOR POWERS OF ATTORNEY REVOKED.  All Powers of Attorney executed by me prior to the date of this Power of Attorney are revoked.

5.   TERMINATION ON DEATH.  Without regard to my mental or physical condition, this Power of Attorney shall continue in effect until revoked or until my death, whichever occurs first.

I have executed this instrument on this 7th day of February, 2022.

_____
ZIAD E. M. ABOUKLOUB
3841 50th Street Suite B
Lubbock, Texas, 79413

STATE OF INDIANA, LA PORTE COUNTY, SS:

The undersigned, a Notary Public in and for the above county and state, residing in La Porte County, Indiana, certifies and witnesses that **Ziad E. M. Aboukloub**, personally known to me to be the same person whose name is subscribed to this instrument, appeared before me in person and acknowledged the signature and delivered the instrument as a free and voluntary act, for the uses and purposes named in the instrument.

DATED this 7th day of February, 2022.

ANTHONY NOVAK
My Commission Expires
November 16, 2022
Commission Number 660582
La Porte County

Anthony G. Novak, Notary Public

4

## *DECLARATION*

*I affirm under the penalties of perjury that I have taken reasonable care to redact each Social Security Number in this document, unless required by law.*

/s/ *Anthony G. Novak*
Anthony G. Novak, *Declarant*

THIS INSTRUMENT PREPARED BY: Anthony G. Novak, Newby, Lewis, Kaminski & Jones, LLP, 916 Lincolnway, La Porte, Indiana 46350.